UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   MICHAEL JACQUES JACOBS,                    No. 19-12591-j11

Debtor.

MICHAEL JACQUES JACOBS,

Plaintiff,

v.                                                  Adversary No. 20-1053-j

DLJ MORTGAGE CAPITAL, INC. et al.;

Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the following motions: 1) Motion to Dismiss filed by

DLJ Mortgage Capital Inc. ("DLJ Mortgage" or "DLJ"), Selene Finance, LP ("Selene Finance),

Selene CS Participation LLC ("Selene CS"), and Mortgage Electronic Registration, Systems Inc.

("MERS") (sometimes, "DLJ/Selene/MERS's MTD" - Doc. 11); and 2) Nationstar Mortgage,

LLC's Motions to Set Aside Entry of Default and Dismiss (sometimes, "Nationstar's MTD" –

Doc. 15) (together, the "Motions to Dismiss").[1,2]  For the reasons explained below, the Court

will grant the Motions to Dismiss, in part, and dismiss all claims in this adversary proceeding

asserted against the Movants, except for the claim asserted against Selene Finance for violation

of the Fair Debt Collection Practices Act ("FDCPA").

---

[1] Nationstar's Motion to Dismiss included a motion to set aside the Clerk's Entry of Default, which the
Court granted by separate order. Doc. 42.
[2] Nationstar Mortgage, LLC ("Nationstar"), DLJ, Selene Finance, Selene CS, and MERS together are
called "Movants."

## I.    General Background

The Complaint initiating this adversary proceeding alleges four claims: (1) fraudulent misrepresentation; (2) violation of the FDCPA, (3) intentional infliction of emotional distress, and (4) a request for declaratory a declaratory judgment. Plaintiff asserts claims (1), (3) and (4) against all Defendants, and claim (2) only against Defendants DLJ and Selene Finance. The Motions to Dismiss together seek dismissal of all claims asserted against each of the Movants.

Plaintiff filed an objection to DLJ/Selene/MERS's MTD (Doc. 23), arguing that the Court should deny the motion because it was not timely filed. Plaintiff also objected to Nationstar's MTD (Doc. 24), responding individually to each allegation contained in the motion and requesting the Court to deny the requested relief.

### A.    Procedural Background

#### 1. Procedural Background Relating to the Chapter 11 Case

Plaintiff Michael Jacobs, d/b/a Michael Jacobs Photojournalism filed a voluntary petition under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq* on November 13, 2019. *See* Case No. 19-12591-j11 ("Bankruptcy Case" – Doc. 1). Plaintiff filed his chapter 11 case for the purpose of keeping the residential property where he and his wife reside (the "Property").

On April 2, 2020, DLJ filed a motion for in rem relief from the automatic stay to permit it to foreclose a mortgage against the Property ("Mortgage") under a foreclosure judgment entered on June 5, 2018 (the "Foreclosure Judgment") following a trial on the merits in an action styled, *DLJ Mortgage Capital, Inc. v. Ruby Handler Jacobs a/k/a Ruby Jacobs, Michael Jacobs, et al.,* Case No. D-202-CV-2012-09237 (the "Foreclosure Action"). Bankruptcy Case – Doc. 27.[3] The Foreclosure Judgment was entered prior to commencement of the Bankruptcy Case.

---

[3] The Foreclosure Judgment was an in rem judgment because Mr. Jacobs and his spouse had been granted a bankruptcy discharge in a earlier bankruptcy case prior to entry of the judgment.

-2-

In its Memorandum Opinion relating to an Order Granting Motion for Issue/Claim Preclusion (Bankruptcy Case – Docs. 117 and 118, respectively), the Court concluded that the Foreclosure Judgment, which was entered after a trial on the merits, together with the State Court's Findings of Fact and Conclusions of Law ("Findings and Conclusions") supporting its Foreclosure Judgment, were entitled to preclusive effect in subsequent litigation between DLJ and Mr. Jacobs under the doctrine of issue preclusion as adopted in the State of New Mexico and barred Mr. Jacobs from challenging DLJ's standing to foreclose the Mortgage. The Court ruled on the issue in connection with a motion for relief from the automatic stay filed by DLJ. The Court also ruled, for the reasons set forth in the Memorandum Opinion (Bankruptcy Case – Doc. 117), that "Debtor is precluded from asserting that DLJ lacks standing to seek relief from the automatic stay." In a Memorandum Opinion and Order entered April 16, 2021, the Court denied Debtor's motion to reconsider its ruling that the Foreclosure Judgment and Findings and Conclusions have issue preclusive effect. Bankruptcy Case – Doc. 148.

Following an evidentiary hearing held April 22, 2021, the Court entered an order granting DLJ in rem relief from the automatic stay on May 24, 2021 (the "Stay Relief Order," Bankruptcy Case – Doc. 160) supported by a Memorandum Opinion filed the same date. (Bankruptcy Case – Doc. 159). At the hearing, the Court admitted into evidence by stipulation of the parties the Amended Complaint filed in the Foreclosure Action (Exhibit 9), the Findings and Conclusions (Exhibit 12) that are incorporated by reference into the Foreclosure Judgment, and the Foreclosure Judgment (Exhibit 13). *See* Minutes filed April 23, 2021 (Bankruptcy Case – Doc. 153) (reciting the date of the final hearing and the exhibits admitted into evidence by stipulation).

On June 23, 2021 the Court entered an order denying Mr. Jacob's motion to alter or amend the Stay Relief Order under Fed.R.Civ.P. 59, made applicable by Fed.R.Bankr.P. 9023,

because the motion was untimely. Bankruptcy Case – Doc. 173. On March 8, 2022, the Court

entered an order (Bankruptcy Case – Doc. 229), supported by a Memorandum Opinion

(Bankruptcy Case – Doc. 228), denying Mr. Jacob's motion for relief from the Stay Relief Order

under Fed.R.Civ.P. 60(b), made applicable by Fed.R.Bankr.P. 9024.

       2.    <u>Procedural Background Relating to this Adversary Proceeding.</u>

Nearly a year after Mr. Jacobs commenced his chapter 11 case, on September 15, 2020,

he initiated this adversary proceeding by filing a Complaint for Damages and Declaratory

Judgment with Demand for Jury Trial ("Complaint" – Doc. 1). The Complaint initiating this

adversary proceeding relates to a promissory note ("Note") secured by the Mortgage against the

Property where Mr. Jacobs and his wife resides, and the Mortgage, and alleges defects in the

chain of who holds and is entitled to enforce the Note and the chain of title relating to the

Mortgage encumbering the Property.

The Court issued a summons in this adversary proceeding on September 18, 2020. Doc.

2. Plaintiff filed a Certificate of Service on September 25, 2020, certifying that service of the

summons and a copy of the Complaint was made on all seven named Defendants by regular first-

class United States mail, postage pre-paid. Doc. 4.

The Court held a scheduling conference on October 30, 2020. None of the seven named

Defendants appeared and none of the Defendants had answered or otherwise responded to the

Complaint. Concerned about whether service of process was made properly, the Court entered an

order requiring the Plaintiff to mail any motion for default judgment to all affected parties at the

addresses where process can be served by mail on the parties under Fed. R. Bankr. P. 7004. Doc.

6.

On November 3, 2020, Plaintiff filed Plaintiff's (I) Request for Entry of Default and (II)

Motion for Entry of Judgment by Default ("Motion for Default Judgment"). Doc. 8. The Court

issued a Notice of Deadline to Object to Motion for Default Judgment ("Notice") which fixed a deadline of November 16, 2020 to file an objection to the Motion for Default Judgment, and provided further that the Court intended to enter default judgment against any Defendant that did not timely file an objection. Doc. 9. The Notice was sent to all Defendants at their addresses of record. *Id*.

The Clerk issued the Clerk's Entry of Default (Doc. 10) on November 6, 2020 as to the following Defendants:

> Bank of New York Mellon as Trustee
> DLJ Mortgage Capital, Inc.
> Mortgage Electronic Registration Systems, Inc.
> Nationstar Mortgage LLC
> [Selene] CS Participation, LLC
> Selene Finance, LP
> US Bank National Association as Trustee

On the same day, DLJ, Selene Finance, Selene CS, and MERS filed their motion to dismiss under Fed.R.Civ.P. 12(b)(6) (Doc. 11).[4] On November 16, 2020, DLJ, Selene Finance, Selene CS, and MERS filed a Motion to Set Aside Entry of Default (Doc. 17) and an objection to the Motion for Default Judgment (Doc. 16). Also on November 16, 2020, Nationstar filed Nationstar Mortgage LLC's Motions to Set Aside Entry of Default and Dismiss under Rule 12(b)(6). Doc. 15.

On March 17, 2022, the Court entered a Memorandum Opinion and order setting aside the Clerk's Entry of Default as to DLJ, Selene Finance, Selene CS, MERS, and Nationstar for good cause. Doc. 42. Under the circumstances, the Court found that these Defendants' failure to timely file an answer or otherwise respond to the Complaint was not willful, that they have a sufficiently meritorious defense so as to warrant setting aside the Clerk's Entry of Default, and

---

[4] Fed.R.Civ.P. 12(b)(6) is made applicable to this adversary proceeding by Fed.R.Bankr.P. 7012(b)and hereafter is called Rule 12(b)(6).

that Plaintiff will not be legally prejudiced by setting aside the Entry of Default. The Court also recognized the strong public policy of resolving cases on their merits.

**B.      The Court Will Not Deny DLJ/Selene/MERS's MTD Based on Untimeliness**

Plaintiff asserts that DLJ/Selene/MERS's MTD is untimely because it was filed after the answer deadline fixed in the Summons for filing an answer to the Complaint. Though the recited timing is accurate, the Court will not deny DLJ/Selene/MERS's MTD because it was filed after the answer deadline specified in the Summons. As stated above, at a scheduling conference held after the answer deadline at which none of the seven named Defendants appeared, the Court was concerned that Defendants may not have been properly served with process and issued an order requiring Plaintiff to send a copy of any motion for default judgment by mail to all affected parties at the addresses where process can be served on such parties under Fed.R.Bankr.P. 7004. Doc. 6.

Plaintiff filed the Motion for Default Judgment (Doc. 8), and the Court entered a Notice (Doc. 9) fixing a deadline of November 16, 2020 for Defendants to object to the Motion for Default Judgment. DLJ, Selene Finance, Selene CS, MERS, and Nationstar all filed objections to the Motion for Default Judgment by the deadline, and sought to set aside the Clerk's Entry of Default. (Docs. 15, 16, and 17). In granting the motions to set aside the Clerk's Entry of Default, the Court fixed a new deadline of November 16, 2020 for DLJ, Selene Finance, Selene CS, MERS, and Nationstar to answer or otherwise respond to the complaint. Doc. 42. The November 16, 2020 deadline coincided with the deadline fixed in the Notice of the deadline to object to the Motion for Default Judgment. DLJ/Selene/MERS's MTD and Nationstar's MTD were both timely filed by the new deadline to file an answer or other response to the Complaint. The Court therefore will deny Plaintiff's request that it deny DLJ/Selene/MERS's MTD based on untimeliness.

**C.  The Court May Rule on the Motions to Dismiss on their Merits Instead of Requiring a Motion for Summary Judgment**

Generally, a motion to dismiss under Rule 12(b)(6) must be converted to a motion for summary judgment unless dismissal can be justified without considering materials outside of the pleadings. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)**.** Under an exception to this general rule, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Id. See also Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215–16 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002))).

The Complaint initiating this adversary proceeding includes the following allegations:

35.     A Final Judgment was entered against Plaintiff on June 5, 2018 in the Foreclosure Action originally initiated by DLJ, on or about October 5, 2012, Case # D-202-CV-201209237 in the 2ⁿᵈ Judicial Court in and for Bernalillo County, New Mexico.

39.     An Amended Complaint in the Foreclosure Action was filed on October 24, 2014, incorrectly adding Selene Finance as co-plaintiff.

At the final hearing on DLJ's Stay Motion, this Court admitted into evidence by stipulation of DLJ and Mr. Jacobs: (a) the Amended Complaint filed in the Foreclosure Action, referenced in paragraph 39 of the Complaint initiating this Adversary Proceeding, (b) the Foreclosure Judgment referenced in paragraph 35 of the Complaint initiating this Adversary Proceeding, and (c) the Findings and Conclusions incorporated by reference into the Foreclosure Judgment.

The Amended Complaint filed in the Foreclosure Action and the Foreclosure Judgment are both referenced in the Complaint initiating this Adversary Proceeding and are central to the

Plaintiff's claims. The Findings and Conclusions are part of the Foreclosure Judgment. There is no genuine dispute about the authenticity of those documents, which are also attached to DLJ/Selene/MERS's MTD as Exhibits 5 and 6. The Court therefore may, and will, consider the Amended Complaint filed in the Foreclosure Action, (b) the Findings and Conclusions, and (c) the Foreclosure Judgment in connection with the Motions to Dismiss without converting the Motions to Dismiss to summary judgment motions.

**D.    Allegations in the Complaint**

The Court will address the Motions to Dismiss separately with respect to each of the four claims alleged in the Complaint filed in this adversary proceeding, but first will summarize allegations in the Complaint that are material to the Motions to Dismiss.

1.    <u>Allegations in the Complaint Applicable to all Alleged Claims</u>

The Complaint includes the following allegations incorporated by reference into each of the four alleged claims:

(a)    Plaintiff's wife, Ruby Handler Jacobs ("Ruby Jacobs"), executed a Promissory Note ("Note") secured by a Mortgage executed by Plaintiff and Ruby Jacobs in favor of Encore Credit Corporation ("Encore"). Complaint ¶ 30.[5]

(b)    The Note purportedly was endorsed by Encore to Impac Funding Corporation ("Impac"), Impac to EMC Mortgage Corporation ("EMC"), and then by EMC in blank. Complaint, ¶ 31.

(c)    Recorded Corporate Assignments of Mortgage purported to assign the Mortgage first on February 25, 2011 by MERS o/b/o[6] Encore to Nationstar, second on April 28, 2011 by MERS o/b/o Encore to U.S. Bank National Association, as Trustee for the Holders of Maiden Lane Asset Backed Securities 2008-1 Trust ("USB as Trustee"), and third on or about May 14, 2013 by USB as Trustee to DLJ. Complaint, ¶¶ 32-34.

(d)    The three assignments of the Mortgage were recorded in the Official Records of the Bernalillo County Clerk on February 28, 2011, May 3, 2011, and May 14, 2013, respectively. *Id*. The Complaint refers to the three assignment of Mortgage as AOM 1, AOM 2, and AOM 3, respectively.

---

[5] The loan to which the Note and Mortgage related hereafter is called the "Loan."
[6] O/b/o stands for "on behalf of."

(e)     The Foreclosure Action was originally initiated by DLJ on or about October 5, 2012, Case # D-202-CV-201209237 in the Second Judicial Court in and for Bernalillo County, New Mexico. Complaint, ¶¶ 35 and 42.

(f)     An amended complaint ("Amended Complaint") was filed in the Foreclosure Action incorrectly adding Selene Finance as co-plaintiff with DLJ. DLJ and Selene Finance claimed that Selene CS acquired a 50% interest in the Loan in January 2012. Complaint, ¶¶ 39, 40, and 44.

(g)     DLJ did not have standing to file the original complaint in the Foreclosure Action. The plaintiff filing the Amended Complaint should have been DLJ and Selene CS, not DLJ and Selene Finance. Complaint, ¶¶37, 39, and 41.

(h)     DLJ and Selene Finance each claimed to be 50% holder of the Note in the Foreclosure Action, which destroyed the ability of both entities to enforce the Note. Complaint, ¶44.

(i)     A Final Judgment was entered in the Foreclosure Action on June 5, 2018. Complaint, ¶ 35.

(j)     In October 2019, Plaintiff retained a private investigator and learned that the true holder and owner of the Loan was the Encore Credit Receivables Trust 2005-1 Trust ("Encore Trust" or "Bank of New York Mellon as Trustee") and that Bank of New York Mellon as Trustee transferred the Loan to Maiden Lane Asset Backed Securities Trust 2008-1 ("Maiden Lane Trust" or "USB as Trustee"). Complaint, ¶¶ 46-49.[7]

(k)     The Loan is still an asset of the Maiden Lane Trust, it was not transferred to DLJ. Complaint, ¶50.

(l)     Plaintiff filed a chapter 11 case on November 13, 2019 (the "Bankruptcy Case"). Plaintiff objected to DLJ's motion for relief from stay filed in the Bankruptcy Case on the ground that DLJ is not a holder of the Note and does not have standing to file the motion, and therefore is not entitled to stay relief or other relief. Complaint, ¶¶ 53-55

(m)     DLJ, Selene Finance, and Selene CS have not filed a legally enforceable proof of claim in the Bankruptcy Case within the time allowed by law. Complaint, ¶ 57.

---

[7] The Complaint refers to the Encore Trust and Maiden Trust and alleges that Bank of New York Mellon was trustee for the Encore Trust and USB was trustee for the Maiden Lane Trust.

2.    <u>Claim of Fraudulent Misrepresentation</u>

(a)    In the "First Cause of Action [–] Fraudulent Misrepresentation," Plaintiff

alleges:

(1)    DLJ and Selene Finance have represented that they are the legal holders of the Loan and the that Loan is secured by the Property. Complaint, ¶ 61.

(2)    An examination of the chain of title (Complaint, ¶¶ 62-78) relating to the Note and Mortgage shows that neither DLJ, nor DLJ and Selene Finance together, are holder(s) of the Note; they are not entitled to enforce it. Complaint, ¶ 79.

(3)    "The Note was transferred by the original lender Encore to Impac and by Impac to EMC pursuant to the endorsements on the alloriges to the Note. "The question raised is how MERS could transfer the Note and Mortgage to Nationstar and then later the Mortgage to U.S. Bank as Trustee for the Maiden Trust. Per the endorsements, the Note had been transferred from Encore to Impac and from Impac to EMC." Complaint, ¶ 75.

(4)    MERS and USB as Trustee made false representations as to the transfer of the Note and Mortgage which were recorded in the Public Records of Bernalillo County, New Mexico. Complaint, ¶ 81.

(5)    DLJ and Selene Finance made false representations in the Foreclosure Action that they were the holders of the Note and Mortgage entitled to enforce it. Complaint, ¶ 82.

(6)    Defendants knew or should have known the representations were false, made the representations to defraud Plaintiff, and Plaintiff relied on the representations to his detriment. Complaint, ¶¶ 83, 84, and 85.

(b)    The only allegations in the "First Cause of Action [–] Fraudulent

Misrepresentation" that identify Nationstar are:

(1) AOM 1 assigned the Note and Mortgage by MERS o/b/o the Original Lender Encore to Nationstar. There is no assignment of Mortgage in the Public Records of Bernalillo County from Nationstar to anyone. Complaint, ¶ 72.

(2) The Note was transferred by the original lender Encore to Impac and by Impac to EMC pursuant to the endorsements on the alloriges to the Note. The question raised is how MERS could transfer the Note and Mortgage to Nationstar and then later the Mortgage to U.S. Bank as Trustee for the Maiden Trust. Per the endorsements, the Note had been transferred from Encore to Impac and from Impac to EMC. Complaint, ¶ 75.

-10-

(3) MERS had no interest in Plaintiff's Loan to transfer to USB as Trustee for the Maiden Trust. Neither did MERS have any interest in Plaintiff's Loan to transfer to Nationstar pursuant to AOM 1. Complaint, ¶ 77.

3.     <u>Claim of Violations of the Fair Debt Collection Practices Act.</u>

Plaintiff's claim for violations of the Fair Debt Collection Practices Act is asserted only against DLJ and Selene Finance. Complaint, ¶ 93. In the "Second Cause of Action [-] Violations of 15 U.S.C. § 1692 *et seq.,* the Fair Debt Collection Practices Act," Plaintiff alleges:

(a)     DLJ and Selene Finance are debt collectors as defined in the Fair Debt Collection Practices Act. Complaint, ¶ 95.

(b)     "DLJ and Selene Finance fraudulently made representations that DLJ, Selene Finance, and Selene CS were holders of the Note when they knew, or should have known [,] that they did not have the right to make such an assertion," that by making these assertions, they misstated the amount and legal status of the debt and used deceptive means in an attempt to collect a debt that was not owed to them. Complaint, ¶¶ 96, 97, and 98.

4.     <u>Claim of Intentional Infliction of Emotional Distress</u>

In Plaintiff's "Third Cause of Action [-] Intentional Infliction of Emotional Distress," Plaintiff alleges:

(a)     "The actions of Defendants MERS, DLJ, Selene Finance, Selene CS, Nationstar, and USB as Trustee of the Maiden Trust . . . have resulted in [Plaintiff] facing continued, imminent loss of his Property. This outcome has been created without any right or privilege on the part of these Defendants, and, as such, the intentional, unlawful recording of false documents in the Public Records of Bernalillo County, New Mexico and the filing of the Foreclosure Action constitute outrageous reckless conduct on the part of Defendants." Complaint, ¶ 102.

(b)     "Defendants intentionally, knowingly, recklessly, and fraudulently made representations that they were the holder of the Note and had transferred [Plaintiff's] loan with knowledge that they did not have the right to make such an assertion." Complaint, ¶ 103.

(c)     "Defendants' acts "were undertaken with the intent of inflicting emotional distress on [Plaintiff] . . . ." Complaint, ¶ 104.

(d)     "Defendants did not act in good faith . . . . [and] committed the acts . . . with complete, utter, and reckless disregard of the probability of causing [Plaintiff] to suffer severe emotional distress." Complaint, ¶¶ 105 and 106.

(e)     As a result of Defendants' "wrongful" and "outrageous conduct" Plaintiff has suffered severe emotional distress, "has been living under the constant emotional and fiscal threat of losing the Property resulting in continuing stress[]" and is therefore entitled to damages, including punitive damages. Complaint, ¶¶ 107, 108 and 109.

5.     Request for Declaratory Judgment

In his request for declaratory relief, the fourth claim, Plaintiff alleges:

(a)     "'Plaintiff' requests Declaratory Judgment to determine who is the actual holder of the Mortgage and Note and the rights of the Plaintiff and Defendants in the Loan and the Property pursuant to 28 U.S.C. §§ 2201 and 2202." Complaint, ¶ 112.

(b)     Defendants have acted wrongfully, committing fraud on the Plaintiff and the Court contrary to the terms of the Warranty Deed for the Property, New Mexico statutes, the FDCPA, and common law principles such that a declaratory judgment to determine who is the actual holder of the Mortgage and Note and rights in the loan and Property is necessary and appropriate. Complaint, ¶ 111.

(c)     "[A]n actual controversy has arisen, and now exists and remains unresolved between [Plaintiff] and Defendants as to their interest in [Plaintiff's] loan and the Property." "[Plaintiff] will suffer irreparable harm in absence of the requested relief because [Plaintiff] is threatened with the sale of his subject property and not having had a marketable legal title to the Property." Complaint, ¶¶ 115 and 116.

**E. Summary of the Movants' Arguments**

DLJ, Selene Finance, Selene CS, and MERS request dismissal on the following grounds:

(a) issue preclusion, the Full Faith and Credit Act, and the *Rooker-Feldman* doctrine bar

relitigation of the claims asserted against DLJ, Selene Finance, Selene CS, and MERS in this

adversary proceeding; (b) Plaintiff is barred from asserting claims against DLJ and Selene

Finance because such claims were compulsory counterclaims that Plaintiff failed to assert in the

Foreclosure Action; (c) the FDCPA does not apply to DLJ and Selene Finance because they are

not "debt collectors" within the meaning of the FDCPA; and (d) the claims for fraudulent

-12-

misrepresentation and intentional infliction of emotional distress against DLJ, Selene Finance, Selene CS, and MERS are barred by the applicable statute of limitations.

Nationstar similarly asserts that the Full Faith and Credit Act and claim preclusion bar Plaintiff's claims against it and that the claims for fraudulent misrepresentation and intentional infliction of emotional distress against Nationstar are barred by the applicable statute of limitations. Nationstar also contends that Plaintiff's claims for fraudulent misrepresentation and intentional infliction of emotional distress against Nationstar fail to allege sufficient factual allegations against Nationstar to state a claim for relief, and that Plaintiff's request for declaratory relief fails because (a) a request for declaratory relief is dependent on the underlying causes of action, which, in this case, are barred by claim preclusion and/or expiration of applicable statutes of limitation, and (b) the request for declaratory relief asserts no justiciable controversy.

## F.    Standard for Considering a Motion to Dismiss

The purpose of a motion to dismiss is to test "the sufficiency of the allegations within the four corners of the complaint[8] after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).[9] In considering a motion to dismiss, the Court examines whether the Plaintiff has alleged facts sufficient to "to state a claim to relief that is plausible on its face."

---

[8] The Court may also consider "not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In addition, as discussed above, in analyzing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court may also consider documents mentioned but not expressly incorporated by reference into the complaint if the documents are central to the plaintiff's claim and an indisputably authentic copy of the document is submitted to the Court for consideration in connection with the motion to dismiss. *GFF Corp.,* 130 F.3d at 1384.

[9] In addition, as discussed in Section C above, the Court may consider the Amended Complaint filed in the Foreclosure Action, referenced in paragraph 39 of the Complaint initiating this Adversary Proceeding, (b) the Foreclosure Judgment referenced in paragraph 35 of the Complaint, and (c) the Findings and Conclusions incorporated by reference into the Foreclosure Judgment.

-13-

*Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The alleged facts must "nudge[] the[] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. A claim is plausible when it has a "reasonable prospect of success . . . . " *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) (citation and quotation marks omitted). The Court evaluates the alleged facts to test their sufficiency in the light most favorable to the plaintiff. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1171, 1178 (10th Cir. 2012).

The expiration of applicable statutes of limitations can serve as grounds to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Cracraft v. Utah Valley Univ.*, No. 21-4031, 2021 WL 5500604, at *3 (10th Cir. Nov. 24, 2021) ("Although the statute of limitations is an affirmative defense . . . a . . . court may dismiss a complaint as time-barred under Rule 12(b)(6) if 'the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.'" (quoting *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018))); *Radloff-Francis v. Wyoming Medical Center, Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) ("[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make it clear that the right sued upon has been extinguished.'" (quoting *Aldrich v. McCullouch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)). Claim preclusion and issue preclusion may also serve as grounds for dismissal under Fed.R.Civ.P. 12(b)(6).[10]

---

[10] *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1185 (10th Cir. 2014) (affirming district court's dismissal under 12(b)(6) on preclusion grounds, but determining that the appropriate preclusion doctrine was issue preclusion, not claim preclusion); *Jiying Wei v. University of Wyoming College of Health School Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019); *Angell v. U.S. Army Corps of* Engineers, 149 F. App'x 34, 36 (2d Cir. 2005) ("Even though *res judicata* is an affirmative defense, it can be upheld on a Rule 12(b)(6) motion if it is clear from the face of the complaint that the plaintiff's claims are barred."); *Monge v. Jayme (In re Jayme)*, No. 15-10504-TL7, 2017 WL 2533340, at *3 (Bankr. D.N.M. June 9, 2017) ("Issue preclusion can be resolved through a 12(b)(6) motion to dismiss if its application is clear

-14-

## G. Analysis of the Claims

1. <u>Plaintiff's fraudulent misrepresentation claims against all Movants</u>

   a) *The applicable statute of limitations bars Plaintiff's fraudulent misrepresentation claims*

Fraudulent misrepresentation under New Mexico law requires proof of the following elements: a representation of fact was made (either by commission or by omission) that was not true,

> (1) the defendant made the representation knowingly or recklessly,
> (2) the representation was made with the intent to induce the plaintiff to rely upon it, and
> (3) that the plaintiff relied on the representation.

*Encinias v. Whitener L. Firm, P.A.*, 2013-NMSC-045, ¶ 22, 310 P.3d 611, 620 (citing UJI 13-1633) (remaining citation omitted).[11]

The applicable statute of limitations for claims based on fraudulent misrepresentation is four years. N.M.S.A. 1978 § 37-1-4 (claims "for relief upon the ground of fraud . . . within four years."); *Rito Cebolla Investments, Ltd. v. Golden West Land Corp.*, 1980-NMCA-028, ¶ 32, 94 N.M. 121, 127, 607 P.2d 659, 665 (cause of action for rescission of real estate contracts based on false representations falls within the four-year statute of limitations); *Ambassador East Apts.*, *Investors v. Ambassador East Investments*, 1987-NMCA-135, ¶ 6, 106 N.M. 534, 536. 746 P.2d 163, 165 ("The statute of limitations for fraud in New Mexico is four years."). The cause of action does not begin to accrue "until the fraud . . . shall have been discovered by the party

---

from the prior pleadings." (citing *Merswin v. Williams Companies, Inc.,* 364 F. App'x 438, 441 (10th Cir. 2010)); *Mulcahy v. Aspen/pitkin Cnty. Housing Authority*, No. 18-CV-0198-PAB-GPG, 2021 WL 795479, at  *2 n. 6 (D. Colo. March 1, 2021) ("[A] motion to dismiss based on claim and issue preclusion is analyzed pursuant to Rule 12(b)(6).").

[11] *See also Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 22, 142 N.M. 209, 216, 164 P.3d 90, 97 ("The elements of fraud include (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation." (quoting *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 112 P.3d 281).

aggrieved." N.M.S.A. 1978 § 37-1-7. *See also Ambassador East Apts.*, *Investors v. Ambassador East Investments*, 1987-NMCA-135, 106 N.M. 534, 746 P.2d 1673. "Discovery is generally defined as 'discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of fraud." (quoting *Romero v. Sanchez*, 83 N.M. 358, 361, 492 P.2d 140, 143 (1971)).

The only misrepresentations Plaintiff alleges in this adversary proceeding with respect to Nationstar are alleged to have occurred in 2011, when Plaintiff alleges that a) the first assignment of record from MERS o/b/o Encore to Nationstar occurred (Complaint, ¶ 32) and a second assignment of record from MERS o/b/o Encore to U.S. Bank as Trustee occurred (Complaint, ¶ 33), when MERS had no interest on behalf of Nationstar or U.S. Bank as Trustee to transfer (Complaint, ¶¶ 75 and 77); and b) there is no assignment from Nationstar to anyone (Complaint ¶ 72). The Amended Complaint, filed by DLJ and Selene Finance in the Foreclosure Action on October 24, 2014, contains allegations regarding the chain of title, including the assignments of mortgage in 2011 by MERS to Nationstar and to U.S. Bank, as Trustee (Amended Complaint, ¶ 9), the assignment to DLJ in 2013 (Amended Complaint, ¶¶ 9 and 14), and allegations regarding the lost note (Amended Complaint, ¶ 12). Attached as Exhibit 3 to the Amended Complaint is a "reduced copy" (Amended Complaint, ¶ 13) of a Flow Subservicing Agreement dated January 31, 2012, that identifies Selene CS as a "Participant."

The only misrepresentations by DLJ, Selene Finance, Selene CS, and MERS alleged in the Amended Complaint filed in this in this adversary proceeding on October 24, 2014 relate to the chain of who holds and is entitled to enforce the Note and the chain of title relating to the Mortgage. Because the allegations in the Amended Complaint concern the transfer of the Note and Mortgage and trace the chain of title that DLJ and Selene Finance relied upon in seeking the Foreclosure Judgment, Plaintiff was placed on notice of the potential problems in the chain of

title of which he now complains and had a duty to review the real property records and investigate the transfers if he believed there were improprieties. *Romero v. Sanchez*, 1971-NMSC-129, 83 N.M. 358, 492 P.2d 140 (""[I]f, considering all the surrounding facts and circumstances, a reasonably prudent person in the exercise of ordinary diligence would have made inquiry as to the state of the record, he is chargeable with knowledge that such inquiry would have revealed from the time that it ought to have been made.").[12] Plaintiff alleges that problems in the chain of title relating to the Mortgage upon the claim of fraudulent misrepresentation is based,[13] which Plaintiff alleges began in 2011, are apparent from a review of the real property public records of Bernalillo County New Mexico. *See* Complaint, ¶¶ 32-34 (alleging the recordation of assignments of the Mortgage by Encore to Nationstar in February 2011, then by Encore to USB as Trustee in May 2011, and finally by USB as Trustee to DLJ in May 2013). *See also* N.M.S.A. 1978, § 14-9-1 (requiring all mortgages and assignments affecting title to real estate to be recorded in the office of the county clerk where the property is situated); N.M.S.A. 1978 § 14-9-2 (recorded documents "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."). Plaintiff

---

[12] The *Romero* court held that whether a reasonably prudent person exercising ordinary diligence would have investigated the recorded public records "raises a factual issue for resolution by the trier of the facts." *Romero,* 1971-NMSC-129, ¶ 26, 83 N.M. at 362, 492 P.2d at 144. However, limiting its review to the Plaintiff's Complaint and the undisputed authentic copies of the documents referenced in Plaintiff's Complaint, the Court is convinced that there is no other conclusion but that a reasonably prudent person would have investigated the records to discover what Plaintiff now asserts are fraudulent misrepresentation claims arising from the chain of who holds and is entitled to enforce the Note and the chain of title relating to the Mortgage upon receiving the Amended Complaint, which traced the alleged assignments and transfers and included an allegation that the note was "lost." *See* Amended Complaint, ¶ 12. *Cf. Jones v. Ford Motor Co.*, 599 F.2d 394, 399-400 (10th Cir. 1979) (citing *Romero v. Sanchez,* 83 N.M. 358 (1971) for the discovery of fraud standard, applying New Mexico law, and affirming district court's ruling on summary judgment that plaintiff was on notice of his fraud claims more than four years before filing his lawsuit).

[13] There is no allegation in the Complaint that any representations were made to Plaintiff regarding transfer of the Note apart from any representation implied by the recordation of assignments of the Mortgage.

should have discovered the alleged problems regarding the chain of title to the Mortgage allegedly occurring in the first half of 2011 and in May of 2013 by the time he was required to answer or otherwise respond to the Amended Complaint filed October 24, 2014. In addition, by that time, Plaintiff had over two years to conduct discovery in the Foreclosure Action to investigate transfers of the Note in light of the alleged inconsistent recorded assignments of the Mortgage by Encore to Nationstar and by Encore to USB as Trustee in February and May of 2011.

Plaintiff filed the Complaint initiating this adversary proceeding on September 15, 2020, well after expiration of the four-year statute of limitations applicable to fraudulent misrepresentation claims. Plaintiff's fraudulent misrepresentation claims against DLJ, Selene Finance, Selene CS, MERS, and Nationstar must be dismissed because they are barred by the applicable statute of limitations.

(b) *The preclusive effect of the Foreclosure Judgment bars Plaintiff's fraudulent misrepresentation claims against DLJ and Selene Finance*

Alternatively, the Foreclosure Judgment bars Plaintiff's fraudulent misrepresentation claims against DLJ and Selene Finance under the doctrine of claim preclusion. Under the Full Faith and Credit statute, 28 U.S.C. § 1738, "a federal court must give to a state court judgment the same preclusive effect as would have been given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 80-82 (1984).[14] The Foreclosure Judgment was entered by a New Mexico state district court. New Mexico preclusion law therefore applies.

---

[14] *See also Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1264 (10th Cir. 2011) ("The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, . . . which directs a federal court to refer to the preclusion law of the State in which the judgment was rendered." (quoting *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008))).

-18-

Claim preclusion under New Mexico law requires that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits must be the same or in privity, and (4) the cause of action is the same in both suits. *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57; *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 3, 139 N.M. 637, 640, 137 P.3d 577, 580, as corrected (June 29, 2006) (discussing privity).[15] In addition, there must have been a full and fair opportunity to litigate the claim in the prior action. *Potter v. Pierce*, 2015-NMSC-002, ¶ 11, 342 P.3d at 59.

The Foreclosure Judgment entered in the State Court Action was a final judgment following a trial on the merits involving Plaintiff, DLJ, and Selene Finance, satisfying the first three requirements for claim preclusion as to Plaintiff's fraudulent misrepresentation claims against DLJ and Selene Finance. The fourth requirement requires the Court to determine whether the fraudulent misrepresentation claims asserted in the Complaint are the same cause of action as claims asserted in the Foreclosure Action for purposes of claim preclusion.

New Mexico applies the transactional approach to determine whether the cause of action is the same in both suits for purposes of claim preclusion. *Potter v. Pierce*, 2015-NMSC-0002 at ¶ 11, 342 P.3d at 58. Under the transactional approach, all issues "arising out of a 'common nucleus of operative facts'" are treated as a single cause of action. *Id.* (quoting *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 8, 122 N.M. 326, 924 P.2d 735. The Court considers "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Anaya*, 1996-

---

[15] New Mexico courts use the terms "res judicata" and "claim preclusion" interchangeably. *E.g. Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57; *Sandel v. Sandel*, 2020-NMCA-025, ¶ 17, 463 P.3d 510, 518; *The Bank of New York v. Romero*, 2016-NMCA-091, ¶ 15, 382 P.3d 991, 996.

NMCA-092, at ¶ 12, 122 N.M. at 330, 924 P.2d at 739 (citing *Restatement (Second) of Judgments* Section 24(2)). Claim preclusion bars claims that are compulsory counterclaims under Rule 1-013(A) of the New Mexico Rule of Civil Procedure. *Potter v. Pierce,* 2015-NMSC-002, ¶ 13, 342 P.3d at 58.

Applying these principles, the Court concludes that Plaintiff's claims for fraudulent misrepresentation against DLJ and Selene Finance in this adversary proceeding are the same cause of action as claims determined in the Foreclosure Judgment entered in the Foreclosure Action. The transfer of the Note, Mortgage, and Loan at issue in the Foreclosure Action forms the basis of Plaintiff's fraudulent misrepresentation claims asserted in the Complaint filed in this adversary proceeding. DLJ and Selene Finance's interests in the Loan were central to the nucleus of operative facts alleged in the Foreclosure Action. In defending the Foreclosure Action, Plaintiff could have asserted counterclaims that these parties made misrepresentations with respect to the Loan.[16] Such counterclaims constitute compulsory counterclaims under Rule 1-013(A) NMRA because they arise out of the same transaction or occurrence as the claims asserted by DLJ and Selene Finance in the Foreclosure Action. *See* Rule 1-013(A) NMRA ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."); *see also Heffern v. First Interstate Bank*, 1983-NMCA-030, ¶ 20, 99 N.M. 531, 534, 660 P.2d 621, 624 ("Allegations of creditor misconduct have been held to be compulsory counterclaims in foreclosure suits . . . ." (citing *Torbit v.*

---

[16] It appears from Jacobs' Answer to Amended In rem Complaint for Foreclosure and Counterclaims ("Answer and Counterclaim," attached as Exhibit 2 to DLJ/Selene/MERS's MTD), that Plaintiff did in fact assert that DLJ and Selene Finance misrepresented that they have the right to enforce the note. Answer and Counterclaim, ¶ 29. The Court recognizes that for purposes of evaluating DLJ/Selene/MERS's MTD, it cannot rely on documents attached to DLJ/Selene/MERS's MTD that are not referenced in the Complaint.

-20-

*Griffith,* 37 Colo.App. 460, 550 P.2d 350 (1976))). "Failure to plead a compulsory counterclaim bars a later action on that claim" under the doctrine of claim preclusion. *Bentz v. Peterson*, 1988-NMCA-071, ¶¶18 and 19, 107 N.M. 597, 601, 762 P.2d 259, 263. In sum, the Foreclosure Judgment precludes Plaintiff from asserting fraudulent misrepresentation claims against DLJ and Selene Finance in this later suit involving the same parties.[17]

> 2    Plaintiff's claims against DLJ and Selene Finance for violations of the Fair Debt
>       Collection Practices Act
>
> (a)  *DLJ is not a "debt collector" subject to the FDCPA. Selene Finance may be
>       subject to the FDCPA because it acquired its interest after Loan was in
>       default and the Foreclosue Judgment does not establish that it was seeking to
>       collect the debt for its own account.*

Plaintiff contends that DLJ and Selene Finance are "debt collectors" as defined in 15 U.S.C. § 1692(a)(6), and have violated 15 U.S.C. §§ 1692(e)(2)(A) and (e)(10)[18] of the FDCPA by 1) fraudulently misrepresenting that DLJ, Selene Finance, and Selene CS were the holders of the Note when they knew or should have known that they did not have the right to make that assertion (Complaint, ¶ 96), 2) misstating the amount and legal status of the debt (Complaint, ¶

---

[17] Nationstar asserts the claim preclusive effect of the Foreclosure Judgment precludes Plaintiff from asserting fraudulent misrepresentation claims against it as well, arguing it was in privity with Selene Finance, its successor in interest to the Property, who was a party to the Foreclosure Judgment. Nationstar relies on *Deflon v. Sawyers*, 139 N.M. 637, 640 (N.M. 2006) for the proposition that parties are in privity for res judicata purposes where they have a successive relationship to the same property at issue in both suits. But it is not clear that the Court can determine in the context of a Rule 12(b)(6) motion that Nationstar is in privity with a party to the Foreclosure Action where Plaintiff is challenging whether Nationstar actually did have a valid relationship to the Property. The Court need not decide whether Plaintiff's fraudulent misrepresentation claim against Nationstar is barred by claim preclusion because the Court will dismiss the claim on other grounds.

[18] Those subsections of 15 U.S.C. § 1692(e) provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The folse representation of—
>
> (A) the character, amount, or legal status of any debt; or
> . . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

-21-

97), and 3) using deceptive means in an attempt to collect a debt not owed to either of them (Complaint, ¶ 98). DLJ and Selene Finance counter that they are not subject to the FDCPA because they are not "debt collectors" within the meaning of the FDCPA.

The FDCPA defines "debt collector" to mean

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts . . . owed or due another.

15 U.S.C. § 1692(a)(6).

Because "debt collector" as defined in the FDCPA is confined to persons collecting or attempting to collect a debt "owed or due another," the United States Supreme Court has determined that the FDCPA does not apply to individuals and entities collecting or attempting to collect their own debts.[19] *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 198 L.Ed.2d 177 (2017). Thus individuals and entities who regularly purchase debts originated by someone else and seek to collect on those debts on their own account do not qualify as debt collectors because they are not regularly seeking to collect debts "owed . . . another." *Id.* at 1721.

This Court agrees that DLJ is not subject to the FDCPA because it is not a "debt collector." The Findings and Conclusions and the Foreclosure Judgment, which have issue preclusive effect as to Plaintiff, DLJ, and Selene Finance,[20] establish that DLJ has an ownership

---

[19] This is so even if the individual or entity seeking to collect a debt acquires its ownership interest in the debt after default. The Supreme Court rejected the argument that the FDCPA's "exclu[sion] from the definition of 'debt collector' certain persons who obtain debts before default" necessarily means "that the definition must include anyone who regularly collects debts acquired after default[,] . . . . [because] under the definition at issue you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector." 137 S.Ct. at 1724.

[20] *See* the text accompanying note 29, below. *See also* this Court's Memorandum Opinion relating to an Order Granting Motion for Issue/Claim Preclusion (Bankruptcy Case – Docs. 117 and 118, respectively), discussed above.

interest in the Note and is entitled to foreclose the Property.[21] Thus, DLJ is enforcing its own

interest and does not meet the statutory definition of "debt collector" under the FDCPA.

Plaintiff's claim against DLJ for violation of the FDCPA will be dismissed.

Selene Finance asserts that it likewise is excluded from the FDCPA because it is

collecting its own debt. But the Findings and Conclusions and the Foreclosure Judgment entered

in the Foreclosure Action do not establish that Selene Finance was seeking to collect the debt for

its own account.[22] If Selene Finance is only a servicer with no ownership interest in the Loan,[23]

then its actions in filing the Foreclosure Action are an attempt to collect a debt "owed . . .

another." 15 U.S.C. § 1692(a)(6). Loan servicers attempting to collect a debt owed to another are

excluded from the FDCPA, but only if they began servicing the loan and acquired their interest

prior to default. 15 U.S.C. § 1692(a)(6)(F) (excluding from the definition of "debt collector"

"any person collecting or attempting to collect any debt . . . owed or due another . . . *which was*

*not in default at the time it was obtained by such person*.") (emphasis added); *Obduskey v. Wells*

*Fargo*, 879 F.3d 1216, 1219 (10th Cir. 2018) (holding that Wells Fargo was excluded from the

FDCPA because the loan was not in default when it began servicing the loan or became assignee

of the debt), *aff'd sub nom., Obduskey v. McCarthy & Holthus, LLP*, 139 S.Ct. 1029, 203

---

[21] *See* Findings and Conclusions,¶ 50 ("The right to enforce the Note was acquired by Plaintiff DLJ Mortgage Capital, Inc. on September 21, 2011 . . . ."); Findings and Conclusions, ¶ 52 ("The agreement specifically provides that DLJ [Mortgage] is the owner of the loan."); Findings and Conclusions, ¶ 56 ("DLJ [Mortgage Capital] and Selene CS Participation own the asset together in its entirely [sic] . . . . "); Foreclosure Judgment, ¶ C ("Plaintiffs [DLJ and Selene Finance] are the real parties in interest with regard to the subject note and . . . is entitled to enforce said Note and foreclose [sic.] of the Mortgage . . . .").

[22] *See, e.g.,* Findings and Conclusions, ¶ 53 ("The acquisition date of the loan by Selene Finance, L.P. was November 1, 2011, the day the servicing rights transferred to Selene Finance, L.P."); Foreclosure Judgment, ¶ C ("Plaintiffs [DLJ and Selene Finance] are the real parties in interest with regard to the subject Note . . . ."). *But see* Findings and Conclusions, ¶ 56 (DLJ and Selene CS Participation own the asset together in its entirely [sic] with each holding a 50% beneficial interest.").

[23] A servicer may "take possession of a debt for servicing and collection even while the debt formally remains owed another." *Henson*, 137 S.Ct. at 1723.

L.Ed.2d 390 (2019); *see also* S. Rep. No. 95-382, at 3-4 (1977) ("[T]he committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing.").

The Findings and Conclusions entered in the Foreclosure Action establish that the Loan was in default as of October 1, 2011 (Findings and Conclusions ¶ 4), and that "[t]he acquisition date of the loan by Selene Finance LP was November 1, 2011 the day the servicing rights transferred to Selene Finance LP" (Findings and Conclusions, ¶ 53). Because Selene Finance acquired its interest *after* the Loan was in default, if it is merely a servicer and not an owner of the Loan, Selene Finance does not fall within 15 U.S.C. § 1692a(6)(F)'s exclusion. And because neither the Findings and Conclusions nor the Foreclosure Judgment conclusively establish that Selene Finance is an owner of the Loan, the Court cannot conclude in the context of a Rule 12(b)(6) motion that Selene Finance is not subject to the FDCPA.

(b) *The Court cannot determine whether Rooker-Feldman bars Plaintiff's claims*

Alternatively, DLJ and Selene Finance assert that the *Rooker-Feldman* doctrine bars Plaintiff's FDCPA claims. "The *Rooker-Feldman* doctrine precludes 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Tal v. Hogan*, 453 F.3d 1244, 1255-56 (10th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). The doctrine bars both claims actually decided by a state court, and claims inextricably intertwined with the prior state-court judgment. *Id.* (citation omitted). *See also Worthington v Anderson,* 386 F.3d 1314, 1318 (10th Cir. 2004) (same). However, *Rooker-Feldman* does not bar a subsequent federal suit "unless 'an element of

the [subsequent] claim . . . [is] that the state court wrongfully entered its judgment.'" *Mayotte v. U.S. Bank N.A.*, 880 F.3d 1169, 1174 (10th C8ir. 2018) (quoting *Campbell v. City of Spencer*, 682 F.3d 1278 1280 (10th Cir. 2012)). This is because, as the Tenth Circuit explained, the Supreme Court's articulation of the *Rooker-Feldman* doctrine in *Exxon Mobil* requires "the losing party in state court . . . [to] complain[ ] of an *injury caused by the state-court judgment* and seek[ ] review and rejection of that judgment[ ]" by the federal court in a subsequent suit. *Mayotte,* 800 F.3d at 1174 (quoting *Exxon Mobil*, 544 U.S. at 291) (emphasis added by *Mayotte*). "What *is* prohibited under *Rooker-Feldman* is a federal action that tries to *modify or set aside* a state court judgment . . . ." *Mayotte*, 880 F.3d at 1174 (citing *Exxon Mobil*, 544 U.S. at 291).

In *Mayotte*, a debtor who lost in a nonjudicial foreclosure proceeding that ended in the entry of an order approving the sale of her property, filed an action in federal district court alleging that the lender and loan servicer violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and the FDCPA by, among other things, fabricating documents, rendering her title unmarketable, and damaging her credit standing. 880 F.3d at 1171. She sought damages, an injunction against the sale, cancellation of the promissory note and deed of trust, and a declaration that the lender and loan servicer had no interest in her home. *Id.* The Tenth Circuit reversed the district court's dismissal of the plaintiff's FDCPA claims, determining that the FDCPA claims did not challenge the nonjudicial foreclosure proceeding or seek to set aside the nonjudicial foreclosure orders. *Id.* at 1175-76. The Tenth Circuit reasoned further that the plaintiff's claims were based on events that predated the nonjudicial foreclosure proceedings and that she could have obtained the relief sought in the federal district court without setting aside the foreclosure sale. *Id.* The Tenth Circuit concluded that application of *Rooker-Feldman* is limited to claims that complain of injuries caused by the entry of the state court judgment and does not

-25-

apply unless one of the elements of the claim asserted in federal court is that the state court judgment was wrongfully entered. *Id.* at 1174. In other words, *Rooker-Feldman* bars a later claim only if it is a direct attack on the state court judgment. *Id.*

It is nevertheless possible that *Rooker-Feldman* may prevent a state court loser from later asserting a claim in federal court for violation of the FDCPA, if ruling in favor of the party on its FDCPA claim would render the state court judgment ineffective, require the federal court to find a debt invalid that the state court determined to be valid, or require the federal court to determine that the state court judgment was erroneously entered or procured by fraud. *See, e.g., MacIntyre v. JP Morgan Chase Bank, N.A.*, 827 F. App'x 812 (10th Cir. 2020) (*Rooker-Feldman* barred plaintiff's claims because her only claim was that the creditor fraudulently procured its foreclosure judgment and orders denying her motions to stay execution of the judgment and she identified no injury independent of the state court orders; consequently, "[b]ecause 'an element of [her] claim' is 'that the state court wrongfully entered its judgment' *Rooker-Feldman* squarely applie[d]." (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012))); *In re Ogilvie*, 533 B.R. 460, 468 (Bankr. M.D. Pa. 2015) (alleged violations of the FDCPA that "assert the invalidity of a debt, which a state court has determined to be valid, are barred by the *Rooker-Feldman* doctrine."); *In re Guy*, 552 B.R 89, 95 (Bankr. D.S.C. 2016) (*Rooker-Feldman* barred plaintiff from asserting claims for violation of the FDCPA where adjudication of such claims would require the court "to determine that the Foreclosure Judgment was erroneously entered or to take action to render that judgment ineffective.").

Here, Plaintiff's claim under the FDCPA is premised on his allegations that "DLJ and Selene Finance fraudulently made representations that DLJ, Selene Finance and Selene CS were the holders of the Note when they knew or should have known, that they did not have the right to

make such an assertion," (Complaint, ¶ 96), that DLJ and Selene Finance "mis-stat[ed] the amount and legal status of the debt," (Complaint, ¶ 97), and that DLJ and Selene Finance "us[ed] deceptive means in an attempt to collect a debt which was not owed to either [of] them" (Complaint, ¶ 98). The allegations, for the most part, merely track the language of the FDCPA itself. *See* 15 U.S.C. § 1692(e)(2)(A) ("false representation of . . . the character, amount, or legal status of any debt"); 15 U.S.C. § 1692(e)(10) ("use of any false representation . . . to collect . . . any debt . . . . "). Although it is quite possible that all alleged grounds for Plaintiff's FDCPA claims in fact seek to challenge the validity of the Foreclosure Judgment or the debt upon which the Foreclosure Judgment was based, or are predicated on an assertion that the Foreclosure Judgment was procured by fraud, the allegations are sufficiently vague, particularly the allegation that Selene Finance used deceptive means in an attempt to collect a debt that was not owed to it, the Court cannot make that determination based solely on a review of the allegations in the Complaint, the Foreclosure Judgment, the Findings and Conclusions, and the Amended Complaint.[24] Consequently, it is not appropriate at this juncture for the Court to dismiss Plaintiff's FDCPA claims against Se;lene Finance under *Rooker-Feldman*.

       (c) The Court cannot determine in the context of the Rule 12(b)(6) motion that
       *Plaintiff's FDCPA claims are compulsory counterclaims*

The Tenth Circuit's *Mayotte* decision teaches that preclusion doctrines, rather than *Rooker-Feldman* serve to curb litigants from seeking subsequent relief that is inconsistent with a prior state court judgment where the requirements for application of the *Rooker-Feldman* doctrine are not met. *Mayotte*, 880 F.3d at 1174-75 ("Seeking relief that is *inconsistent* with the state-court judgment . . . is the province of preclusion doctrine."). Consistent with claim

---

[24] For example, it is not clear from the Complaint that the alleged violations of the FDCPA by DLJ and Selene Finance necessarily require Plaintiff to challenge their right to enforce the Note and Mortgage as determined by the Foreclosure Judgment.

preclusion, which bars subsequent litigation of not only claims actually asserted, but also claims arising out of a common nucleus of operative facts that could have been asserted in the prior action,[25] DLJ and Selene Finance assert that Plaintiff's claims for violation of the FDCPA fail because Plaintiff was required to assert such claims as compulsory counterclaims in the Foreclosure Action. This argument is unavailing in the context of DLJ/Selene/MERS's MTD.

Under New Mexico law, compulsory counterclaims must arise from the same transaction or occurrence that is the subject of the opposing party's claim.[26] A claim for violation of the FDCPA is not properly construed as a compulsory counterclaim to an action seeking to enforce a debt where the FDCPA claim concerns collection practices that are independent of whether the debt itself is valid. *In re Crawford*, No. 08-30192-DHW, 2015 WL 5735187, at *2 (Bankr. M.D. Ala. Sept. 29, 2015) ("An alleged FDCPA violation arises from the collection of a debt. The practices used in collecting the debt have no bearing on whether the debt itself is ultimately valid or not."), *aff'd sub nom.*, *Crawford v. LVNV Funding, LLC*, No. 2:15-CV-00750-JAR, 2016 WL 4249498 (M.D. Ala. Aug., 9, 2016); *Weldon v. Asset Acceptance, LLC*, No. 1:10-CV-0660-JMS-MJD, 2011 WL 902018, at *4 (S.D. Ind. Mar. 14, 2011) (determining that "federal FDCPA claim is an independent claim that 'has nothing to do with whether the underlying deb is valid.

---

[25] *See Potter*, 2015-NMSC-002, ¶ 15, 342 P.3d 54 (Where "two actions are the same under the transactional test and all other elements are met, [claim preclusion] bar[s] a subsequent action [if] the plaintiff could and should have brought the claim in the former proceeding."); *Armijo v. City of Espanola*, 2016-NMCA-085, ¶ 14, 382 P.3d 957, 961 ("[C]laim preclusion 'does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted.'" (quoting *Brooks Trucking Co. v. Bull Rogers, Inc.*, 2010-NMCA-025, ¶ 10, 139 N.M. 99, 128 P.3d 1076).

[26] A compulsory counterclaim is

> Any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the present of third parties of whom the court cannot acquire jurisdiction.

NMRA, Rule 1-013(A).

An FDCPA claim concerns the method of collecting the debt.'" (quoting *Rhines*, 847 N.E. 2d at 238); *see also Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981) (claim for violation of the FDCPA was not a compulsory counterclaim in the underlying action); *Garduno v. Autovest LLC*, 143 F.Supp. 3d 923, 929 (D. Ariz. 2015) ("The strong majority view is that FDCPA claims . . . are not compulsory counterclaims in actions involving the original debt."). The method of collection, covered by the FDCPA, and whether a creditor is owed a debt and can foreclose its mortgage, are two separate matters.

Here, Plaintiff's FDCPA claims are pleaded in such a manner that Plaintiff might be challenging DLJ's and Selene Finance's collection methods without challenging the validity of the debt or the propriety of the entry of the Foreclosure Judgment. The Court cannot determine in the context of DLJ/Selene/MERS's MTD whether the FDCPA claims arise out of the same transaction or occurrence and were required to be asserted as compulsory counterclaims. Plaintiff's FDCPA claims cannot be dismissed under Rule 12(b)(6) based on DLJ/Selene/MERS's MTD's assertion that they constitute compulsory counterclaims that should have been raised in the Foreclosure Action.

3. <u>Plaintiff's claim for intentional infliction of emotional distress</u>

(a) *The alleged conduct is insufficiently outrageous and extreme as a matter of law*

New Mexico recognizes an independent claim for intentional infliction of emotional distress, but "only in limited circumstances." *Akutagawa v. Laflin, Pick & Heer, P.A.*, 2005-NMCA-132, ¶ 21, 138 N.M. 774, 779, 126 P.3d 1138, 1143. A claim for intentional infliction of emotional distress requires the following: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal

-29-

connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 131 N.M. 607, 41 P.3d 333, 341 (2001). To qualify as "extreme and outrageous" the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d.).

The Court determines in the first instance "as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress." *Padwa v. Hadley*, 1999-NMCA-067, ¶ 9, 127 N.M. 416, 419, 981 Pl2d 1234, 1237. In other words, the Court makes the threshold determination as a matter of law whether the factual allegations are sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. The Court acts as the gatekeeper so "the social good from recognizing the tort will not be outweighed by unseemly and invasive litigation of meritless claims." *Morales v. Reynolds,* 2004-NMCA-098, ¶ 15, 136 N.M. 280, 285, 97 P.3d 612, 617 (quoting *Hakkila v. Hakkila*, 112 N.M. 172, 178, 812 P.2d 1320, 1326 (Ct. App. 1991)).

Plaintiff's allegations of various misrepresentations by the Defendants with respect to their rights in the Note and Mortgage causing Plaintiff severe emotional distress do not as a matter of law rise to the level of outrageous and extreme conduct necessary under New Mexico law to state a claim for intentional infliction of emotional distress. As recognized in the Restatement (Second) of Torts § 46,[27] "[t]he actor is never liable . . . where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *See also, McBride v. Bank of America*, 501 F.

---

[27] New Mexico cases adjudicating claims for intentional inflection of emotional distress rely upon the Restatement (Second) of Torts § 46. *See, e.g., Padwa v. Hadley*, 1999-NMCA-067, ¶ 9, 127 N.M. 416, 419, 981 P.2d 1234, 1237 (relying on the Restatement (Second) of Torts).

-30-

App'x 783 (10th Cir. 2012) (unpublished) (affirming district court's dismissal of borrower's claim for intentional infliction of emotional distress; creditor sought dismissal under Rule 12(b)(6) arguing that foreclosing on a deed of trust is not so outrageous as to constitute a claim for intentional infliction of emotional distress as a matter of law); *Salazar v. PennyMac Mtg. Inv. Trust Holdings I, LLC*, No. CV 19-517 KG/LF, 2019 WL 4458961, at *5 (D.N.M. Sept. 17, 2019) (dismissing claim for intentional infliction of emotional distress premised on alleged fraudulent foreclosure action where complaint lacked any supporting factual allegations that would demonstrate extreme outrageous conduct or intentional or reckless conduct necessary to state a plausible claim). DLJ and Selene Finance obtained the Foreclosure Judgment establishing their right to foreclose the Mortgage against Property to collect the debt owing under the Note. By pursuing the foreclosure of the Mortgage, they are seeking to enforce the legal rights they assert they hold. Those rights were established in the Foreclosure Judgment, which has yet to be overturned on appeal.

The allegations in the Complaint challenging the chain of who holds and is entitled to enforce the Note and the chain of title relating to the Mortgage are insufficient to state a claim for intentional infliction of emotional distress by conduct on the part of DLJ, Selene Finance, Selene CS, MERS, or Nationstar. DLJ filed the Foreclosue Action in 2012. Plaintiff asserts that the actions of DLJ, Selene Finance, Selene CS, MERS, or Nationstar caused him severe emotional distress because as a result of those actions he has been living under the constant emotional and fiscal threat of losing the Property resulting in continuing stress. But the State Court, after a trial on the merits, determined that DLJ and Selene Finance have the right to foreclose the Mortgage against the Property and issued an in rem judgment of foreclosure. It is the Foreclosure Judgment that is the source of the threat to Plaintiff of his loss of the Property.

Further, the Court does not find the alleged conduct of DLJ, Selene Finance, Selene CS, MERS, and Nationstar to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

Plaintiff's allegations of intentional infliction of emotional distress fail as a matter of law.

(b) *The applicable statute of limitations bars Plaintiff's claim for intentional infliction of emotional distress*

Plaintiff's claim for intentional infliction of emotional distress is also barred by the applicable statute of limitations. Claims for intentional infliction of emotional distress are subject to a three-year statute of limitations. N.M.S.A. 1978 § 37-1-8 ("Actions must be brought . . . for an injury to the person . . . within three years."); *Williams v. Stewart*, 2005-NMCA-061, ¶ 10, 137 N.M. 420, 424, 112, P.3d 281, 285 (agreeing that a claim for intentional infliction of emotional destress is classifiable as a claim for personal injury so that the three-year statute of limitations under N.M.S.A. 1978 § 31-1-78 applies); *Martinez v. SW Cheese Co., LLC,* No. 35,228, 2017 WL 2081084, at *1 (N.M. Ct. App. Apr. 6, 2017) (applying three-year statute of limitations to claim for intentional infliction of emotional distress).

Nationstar's participation in the chain of title occurred and ended in 2011. The last assignment of mortgage or transfer of the Note as alleged in the Complaint occurred in 2013, DLJ commenced the Foreclosure Action in 2012, and the Amended Complaint was filed in the Foreclosure Action in 2014. Plaintiff bases his claim for intentional infliction of emotional distress on defects in the transfer of the Note, "the intentional, unlawful recording of false documents," and the filing of the Foreclosure Action. All of these actions Plaintiff asserts Defendants took in misrepresenting their ability to transfer or enforce the Note and Mortgage occurred more than three years prior to the date Plaintiff filed this Adversary Proceeding in 2020. Because the Complaint initiating this Adversary Proceeding was filed more than three years after

-32-

the date of the alleged actions that underlie Plaintiff's claim for intentional infliction of

emotional distress, this claim must be dismissed.

    4.    <u>Plaintiff's request for declaratory judgment</u>

        (a) *This Court lacks subject matter jurisdiction over Plaintiff's request for declaratory judgment under the Federal Declaratory Judgment Act*

Plaintiff requests the Court to determine who is the actual holder of the Note and who is

entitled to enforce the Mortgage and the rights of the parties in the Loan pursuant to 28 U.S.C. §

2201 and 2202, the Federal Declaratory Judgment Act. Under 28 U.S.C. § 2201,

> any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

"[C]ourt of the United States" has a specialized meaning, defined in 28 U.S.C. § 451 to

> include[ ] the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior.

Under controlling Tenth Circuit precedent, bankruptcy courts do not qualify as a "court

of the United States" within the meaning of 28 U.S.C. § 451. *In re Courtesy Inns Ltd.,

Inc.*, 40 F.3d 1084, 1086 (10th Cir. 1994) (holding "that bankruptcy courts are not within

the contemplation of [28 U.S.C.] § 1927 because they do not fit within the definition of

"court of the United States" in 28 U.S.C. § 451, "a definition section applicable to all of

Title 28 . . . ."). Consequently, because the Federal Declaratory Judgment Act is part of

Title 28, and because, under controlling Tenth Circuit precedent, bankruptcy courts do

not fit within the definition of 28 U.S.C. § 451, this Court does not have subject matter

jurisdiction over a request for declaratory relief under 28 U.S.C. § 2201.[28] The Court

---

[28] *See In re Play Membership Golf, Inc.*, 576 B.R. 15, (Bankr. D. Colo. 2017) (the bankruptcy court "has an 'unflagging obligation to examine its subject matter jurisdiction at every stage of the proceedings.'" (quoting *Valley Historic Ltd. P'ship v. Bank of N.Y.* 486 F.3d 831, 838 (4th

therefore will dismiss the claim for declaratory relief for lack of subject matter jurisdiction.

(b) *No justiciable controversy exists because the Foreclosure Judgment has preclusive effect*

In addition, to obtain relief under the Federal Declaratory Judgment Act there must be "a case of actual controversy." 28 U.S.C. § 2201. "An actual controversy is 'a case and controversy in the constitutional sense . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *In re City of Cent. Falls, R.I.*, 468 B.R. 36, 44-45 (Bankr. D.R.I. 2012) (quoting *Public Service Com. v. Wycoff Co.*, 344 U.S. 237, 242-243 (1952)).

Plaintiff's request for declaratory relief does not present a justiciable controversy. The Foreclosure Judgment entered in the Foreclosure Action adjudicated the rights of Plaintiff, DLJ, Selene Finance, and Selene CS with respect to the Note, Mortgage and Property. To the extent the Foreclosure Judgment does not have claim preclusive effect with respect to the right of DLJ and Selene Finance to foreclosue the Mortgage, it has issue preclusive effect because (1) these parties were all parties to the Foreclosure Action; (2) this Adversary Proceeding asserts different causes of action than the claims asserted in the Foreclosure Action; (3) entitlement to foreclose the Mortgage was determined in the Foreclosure Action; and (4) that issue was actually litigated and necessarily determined in the final Foreclosure Judgment entered in the Foreclosure

---

Cir. 2007))); *In re Digital Impact, Inc.*, 223 B.R. 1, 5 (Bankr.N.D. Okla. 1998) (The bankruptcy court "has a duty . . . to determine the scope of its jurisdiction.") (citation omitted).

-34-

Action.[29] Selene CS likewise can rely on the Foreclosure Judgment to estop Plaintiff from litigating the issue of what entity has the right to enforce the Mortgage, regardless of whether Selene CS is in privity with Selene Finance. *See Silva v. State*, 1987-NMSC-107, ¶ 11, 106 N.M. 472, 476, 745 P.2d 380, 384 ("[D]efensive collateral estoppel [issue preclusion] may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit . . . .").

As for MERS and Nationstar, neither of those Defendants are seeking to exercise any rights with respect to the Property or claim any interest in the Property. Nationstar has expressly stated that it "claims no interest in the note, mortgage, or property." Nationstar's MTD, p. 11 (Doc. 11). At most, MERS and Nationstar are participants in the chain of who holds and is entitled to enforce the Note and the chain of title relating to the Mortgage. The Plaintiff has no liability under the Note as a result of a bankruptcy discharge. The State Court determined in its Foreclosure Judgment that DLJ and Selene Finance, the named plaintiffs in the Foreclosure Action, are entitled to foreclosure the Mortgage.

Plaintiff has filed an appeal of the Foreclosure Judgment. *See* Complaint, ¶ 43, and Exhibit 6 to the Complaint. The Declaratory Judgment "Act does not provide a means whereby previous judgments by state or federal courts may be reexamined, nor is it a substitute for appeal . . . ." *Shannon v. Sequeechi*, 365 F.2d 827, 829 (10th Cir.

---

[29] The bankruptcy court applies issue preclusion principles of the state in which the judgment was rendered. *Martin v. Hauck (In re Hauck)*, 466 B.R. 151, 161 (Bankr. D. Colo. 2012), *aff'd,* 541 F. App'x 989 (10th Cir. 2013). The elements required for issue preclusion under New Mexico law are:

1966).[30] *See also Franklin Life Ins. co. v. Johnson*, 157 F.2d 653, 656 (10th Cir. 1946) ("It is a general criterion that a court will note entertain jurisdiction in a declaratory action if the identical issues are involved in another proceeding . . . ."). Because Plaintiff has already availed himself of an appeal from the Foreclosure Judgment, there does not appear to be a justiciable controversy before this Court with respect to the rights in the note and mortgage.

### (c) *Even if the Court had jurisdiction over a justiciable controversy, the Court would decline to adjudicate the request*

Finally, even if this Court had subject matter jurisdiction, and even if a justiciable controversy existed, the Declaratory Judgment Act does not impose a duty on federal courts to make a declaration of the parties' rights, *Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962);[31] the Declaratory Judgment Act "confers discretion on the courts rather than an absolute right upon the litigant." *Pub. Serv. Comm'n of Utay v. Wycoff Co.*, 344 U.S. 237, 241 (1952).[32] In this instance, where the Foreclosure Judgment granted DLJ and Selene Finance an in rem right to foreclose the Property, and where Plaintiff has appealed that very Foreclosure Judgment, this Court declines to entertain Plaintiff's request for declaratory relief assuming it had jurisdiction under 28 U.S.C. § 2201, which it does not.

---

1) the parties in the first suit must be the same or in privity with the parties in the second lawsuit; 2) the first and second suit assert different causes of action; 3) the issue or fact was "actually litigated" in the first suit; and 4) the issue was necessarily determined in the first suit. *Blea v. Sandoval*, 1988-NMCA-036, ¶ 18, 107 N.M. 554, 559, 761 P.2d 432, 437 (citation omitted).

[31] "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Rickover*, 369 U.S. at 112.

[32] *See also United States v. City of Las Cruces*, 289 F.3d 1170, 1189 (10th Cir. 2002) ("[D]istrict courts are 'under no compulsion' to grant declaratory relief but have discretion to do so." (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942))); *Pub. Serv. Co. of New Mexico v. City of Albuquerque*, 755 F.Supp 1494, 1496 (D.N.M. 1991) ("Even if it is established that the petition presents a justiciable action within the subject matter jurisdiction of the Court, . . . the Court must additionally decide whether or not to exercise its discretion and hear the action.").

For all these reasons, it is appropriate to dismiss Plaintiff's request for declaratory relief as to all Defendants.

## H.     CONCLUSION

Based on the foregoing, the Court will dismiss all of Plaintiff's claims against DLJ, Selene Finance, Selene CS, MERS, and Nationstar, with prejudice, except with respect to Plaintiff's claim against Selene Finance for violations of the FDCPA. The Court will enter separate orders consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 5, 2022

COPY TO:

Michael Jacques Jacobs
800 Calle Divina NE
Albuquerque, NM 87113

Elizabeth Dranttel
Rose L. Brand & Associates, PC
7430 Washington Street NE
Albuquerque, NM 87102
Attorneys for DLJ Mortgage, Inc.
Selene Finance, LP
Selene CS Participation
Mortgage Electronic Registration Systems, Inc.

Janelle Ewing
The Sayer Law Group
925 E 4th St.
Waterloo, IA 50703
Attorneys for Nationstar Mortgage, LLC,
d/b/a Mr. Cooper Group, Inc.

-37-